## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| CINDY L. KIROUAC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 2:11-cv-00423-NT |
| | ) | |
| PATRICK R. DONAHOE | ) | |
| *Postmaster General, United States* | ) | |
| *Postal Service,* | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF ARBITRATION DECISION

Before the Court is the Plaintiff's motion (ECF No. 168) to exclude evidence from a March 18, 2009 collective bargaining arbitration decision[1] and preclude testimony concerning the related arbitration proceeding. The parties agree that the decision to admit or exclude an arbitration decision lies within the Court's discretion. The Plaintiff offers three alternative grounds for excluding the evidence: (1) that it is inadmissible hearsay and therefore should be excluded under Federal Rules of Evidence 801 and 802; (2) that it is irrelevant and therefore should be excluded under Federal Rules of Evidence 401 and 402; and (3) that its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and waste of time, and therefore it should be excluded

---

[1]     The arbitration decision, which is a total of 45 pages long, was filed in two parts: ECF No. 117-1, containing pages 1 through 21, and ECF No. 117-2, containing pages 22 through 45. For the sake of simplicity, citations to the decision refer to it as a single document titled "Arb. Dec." Pin cites are to the decision's original pagination.

under Federal Rule of Evidence 403. The Defendant argues that the decision should be admitted because it is fundamental to his claim that the Plaintiff was terminated for a legitimate reason and because the Plaintiff has opened the door to the use of the arbitration decision by her allegations which involve the United States Postal Service's (USPS) union grievance system. Def.'s Opp'n to Mot. to Exclude Arb. Dec. (ECF No. 189) ("**Def's Opp'n**"). The Court requested and received additional briefing from both parties. The Plaintiff added an additional basis for exclusion under Federal Rule of Evidence 701—essentially that the Arbitrator's decision is a lay opinion which would not be helpful to the jury. Pl.'s Add'l Br. on Mot. to Exclude Arb. Dec. at 3 (ECF. No. 226). The Defendant proposed a heavily redacted version of the arbitration decision. Def.'s Am. Suppl. Br. in Opp'n to Pl.'s Mot. to Exclude Arb. Dec. at 1-2 (ECF. No. 225) ("**Def.'s Am. Suppl. Br.**").

For the reasons stated below, the Court provisionally **GRANTS** the Plaintiff's motion under Federal Rule of Evidence 403.

## BACKGROUND

### A.    The Events of June 13, 2008

The Plaintiff, Cindy L. Kirouac, brings five claims against the Defendant: (1) a retaliation claim under Title VII; (2) a retaliation claim under the Rehabilitation Act; (3) a disability discrimination claim under the Rehabilitation Act; (4) a harassment claim under the Rehabilitation Act; and (5) a disability discrimination claim under the Rehabilitation Act on the grounds that the Plaintiff's termination was not based on medical information that she presented a safety risk. Pl.'s Compl.

67-71 (ECF No. 1). Though the claims relate to Kirouac's entire eight-year tenure as a mail carrier at the Lewiston Post Office, in Lewiston, Maine, beginning in July 2000, the events of Kirouac's final day of work, June 13, 2008, are most relevant to this motion.[2]

On that day, Kirouac got into a verbal altercation with two Postal Service supervisors when she returned to the Post Office at the end of the work day without completing her route. *Kirouac*, 2013 WL 2638045, at *12-13. The supervisors ordered her to go back out and finish, despite her assertions that her doctor had restricted her to work no more than eight hours a day. *Id.* at *13-14. Kirouac refused to go back out on her route and left without delivering any more mail. *Id.* at *14.

## B.    The Plaintiff's Firing

On June 17, 2008, the Postal Service disciplined Kirouac for her behavior during and following the altercation by putting her out of work without pay on an "emergency placement." *Id.* at *14.  On June 24, 2008, the Postal Service issued Kirouac a notice of removal, informing her that her position had been terminated because she had violated two provisions of the Postal Service's Employee and Labor Relations Manual, Section 665.15, which requires employees to obey their supervisor's instructions even if they believe them to be in error and only protest them later through official channels, and Section 665.16, which requires employees

---

[2]    The Court takes general, essentially uncontested background information from *Kirouac v. Donahoe*, Docket No. 2:11-cv-00423-JAW, 2013 WL 2638045, at *15 (D. Me.  June 12, 2013) to provide context for this order.

to "conduct themselves . . . in a manner that reflects favorably upon the Postal Service," and two provisions of the Postal Service's M-41 Handbook, Section 112.21, which requires employees to obey their managers' instructions, and Section 131.33, which requires employees to deliver all mail on their routes before leaving work, unless a unit manager instructs otherwise. *Id.* at *15.

## C.   The Grievance Process and Arbitration Hearing

Kirouac and her union, the National Association of Letter Carriers ("**NALC**"), challenged the notice of removal under the union's collective bargaining agreement. *Kirouac*, 2013 WL 2638045, at *16. The challenge culminated in a two-day arbitration hearing, held on December 18, 2008 and January 26, 2009. *Id.*

At the hearing, Kirouac was represented by Renee Overlock, a Postal Service letter carrier and a NALC union officer, who, according to the Plaintiff, had only served as an advocate in one prior arbitration. Aff. of Cindy L. Kirouac 14 (ECF 104-1) ("**Kirouac Aff.**"). The Defendant, meanwhile, was represented by Theresa Dougherty, a Postal Service labor relations specialist who then had approximately three years of experience in her position, and Edward Tierney, a second Postal Service labor relations specialist who then had approximately thirty years of labor relations experience. Second Declaration of Theresa Dougherty 1 (ECF No. 225-1) ("**Dougherty Decl. II**"); Kirouac Aff. 14-15. Both sides were allowed to engage in oral argument, call witnesses, conduct direct and cross-examination, introduce exhibits in support of their positions, and submit written briefs as their closing arguments. Arb. Dec. 9; Dougherty Decl. II 2.

During the hearing, Kirouac testified and called four additional witnesses: Tim Perkins, a NALC shop steward at the Lewiston Post Office, Marty Lang, the branch president for NALC in Lewiston, and Danielle Bertrand and Kathleen Stetson, both letter carriers. Arb. Dec. 1, 27-28. The Defendant, meanwhile, called just two witnesses: Wendy Blouin, a customer service supervisor at the Lewiston Post Office, and Mitchell Curtis, the officer-in-charge and temporary postmaster at the Lewiston Post Office at the time Kirouac was discharged. Arb. Dec. 1, 22, 24.

## D.    The Arbitration Decision

On March 18, 2009, union arbitrator Michael Pecklers issued a decision concluding that neither Kirouac's emergency placement nor her termination violated the collective bargaining agreement. Arb. Dec. at 1-43.

The decision is broken into eight discrete sections. Arb. Dec. 2, 9, 11, 12, 22, 34, 43. The first section, "BACKGROUND OF THE CASES," explains the procedural history of the grievance process, including what the decision refers to with little elaboration as "Informal Step A," "Formal Step A," and "Step B." Arb. Dec. 2-9.

The second section, "ISSUES AS FRAMED BY STEP B TEAM," describes the issues before the arbitrator, as determined in the earlier steps in the grievance process:

> 1) Did Management violate Article 16.7 of the [collective bargaining agreement] when they issued the Grievant an Emergency Placement in Off-Duty Status Without Pay Notice? If so, what shall the remedy be?
>
> 2) Did Management have just cause to issue the Notice of Removal to the Grievant for Unacceptable [Conduct]? If not, what shall be the remedy?

5

Arb. Dec. 9.

The third section, entitled "RELEVANT CONTRACT LANGUAGE," quotes certain provisions of the collective bargaining agreement between NALC and the Postal Service, including excerpts from Article 3, which outlines the Postal Service's management rights, Article 16, which outlines the discipline procedure the Postal Service must follow, and Article 17, which outlines the relationship between the collective bargaining agreement and the Postal Service's employee handbook and manuals. Arb. Dec. 9-11. Of particular importance are two sections quoted from Article 16. Section 1 provides, in relevant part, that the Postal Service may not discipline or discharge an employee "*except for just cause*[,] such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of [the collective bargaining agreement], or failure to observe safety rules and regulations." Arb. Dec. 10 (emphasis added). Section 16.7 provides, in relevant part, that the Postal Service may put an employee on an "emergency placement" out of work without pay where there is an "allegation involv[ing] intoxication (use of drugs or alcohol), pilferage, or failure to observe safety rules and regulations, or in cases where retaining the employee on duty may result in damage to U.S. Postal Service property, loss of mail or funds, or where the employee may be injurious to self or others." Arb. Dec. 11.

Although the arbitration decision does not cite it, the collective bargaining agreement also contains Article 2, entitled "NON-DISCRIMINATION AND CIVIL RIGHTS." Dougherty Decl. II 4. Section 1 of Article 2 provides that "there shall be

6

no discrimination by the Employer or the Union against employees because of . . . sex" and "no unlawful discrimination against handicapped employees, as prohibited by the Rehabilitation Act." Dougherty Decl. II 4.

In subsequent sections of the opinion, the arbitrator recounts the parties' factual stipulations, *see* Arb. Dec. 11 (titled "STIPULATIONS"), reviews the parties' positions, *see* Arb. Dec. 12-22 (titled "CONTENTIONS OF THE PARTIES"), summarizes the testimony of the various witnesses, *see* Arb. Dec. 22-33 (titled "SUMMARY OF THE RELEVANT TESTIMONY"), and analyzes the case in reference to provisions of the collective bargaining agreement and previous arbitration cases decided on similar facts. *See* Arb. Dec. 34-42 (titled "STATEMENT OF THE CASES"). Ultimately, the arbitrator concludes that on June 13, 2008, Kirouac violated the four Postal Service regulations cited in the notice of removal and that the Postal Service's decisions to put the Plaintiff on an emergency placement and then discharge her complied with the collective bargaining agreement. Arb. Dec. 42-43. In the opinion's brief final section, titled "CONCLUSION," the arbitrator finds as follows:

> The United States Postal Service has established by a preponderance of the credible evidence that there was just cause to issue the Notice of Emergency Placement in Off-Duty Status and the Notice of Removal to Cindy Kirouac.

Arb. Dec. 43.

The Defendant's proposed redactions (ECF Nos. 225-2 through 225-6) encompass approximately thirty pages of the decision, including the entire sections

on the contention of the parties and the summary of the relevant testimony, and
almost the entire section entitled "STATEMENT OF THE CASES."

## DISCUSSION

The starting point in the analysis is *Alexander v. Gardner-Denver Company*,
415 U.S. 36 (1974), which involved a factory worker fired by his employer, the
Gardner-Denver Company, purportedly for doing inadequate work. *Gardner-
Denver*, 415 U.S. at 38-39. Alexander contended that the true reason for his
termination was that he was black. *Id.* Alexander filed a grievance under the
factory's collective bargaining agreement, which provided that Gardner-Denver
could only fire workers for "just cause" and prohibited Gardner-Denver from
discriminating on the basis of race.  *Id.* at 39, 43. The agreement also contained a
broad clause requiring employees to submit to arbitration any "'differences aris[ing]
between the Company and the Union as to the meaning and application of the
provisions of [the collective bargaining agreement]' and 'any trouble aris[ing] in the
plant.'" *Id.* at 40-42. The arbitrator who heard the case rejected Alexander's
discrimination theory and ruled that Gardner-Denver had "just cause" for firing
Alexander without even referencing Alexander's defense in the decision. *Id.* at 42.

Alexander also filed a Title VII suit. *Id.* at 43. The federal district court
hearing the case granted summary judgment to Gardner-Denver, finding that
because Alexander's racial discrimination claim had been submitted to an
arbitrator, the arbitrator's decision should be given preclusive effect. *Id.*

The vast majority of the Supreme Court's opinion deals with whether the arbitrator's decision should be considered preclusive, or, if not, should be given deference. *See id.* at 36-60. The Court ultimately held that the district court could not give the arbitrator's decision either preclusive effect or any deference. *Id.* at 44-60. However, in the final sentence of the opinion, the Court noted that, on remand, "[t]he arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate." *Id.* at 60. The Court clarified this sentence in Footnote 21, which includes what are referred to below as "the *Gardner-Denver* factors":

> We adopt no standards as to the weight to be accorded an arbitral decision, since this must be determined in the court's discretion with regard to the facts and circumstances of each case. Relevant factors include the existence of provisions in the collective-bargaining agreement that conform substantially with Title VII, the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue of discrimination, and the special competence of particular arbitrators. . . .

*Id.* at 60 n.21.

*Gardner-Denver* must be understood in context. At the time the Supreme Court decided the case, jury trials were not available under Title VII,[3] and the Federal Rules of Evidence had not yet been enacted.[4] So although the case suggests

---

[3]        *See* Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071; Timothy D. Loudon, *The Civil Rights Act of 1991: What Does It Mean and What Is Its Likely Impact?*, 71 Neb. L. Rev. 304, 312 (1992).

[4]        *See* Fed. R. Evid. 802; An Act to Establish Rules of Evidence for Certain Courts and Proceedings, Pub. L. 93-595 (1975) (enacting the Federal Rules of Evidence on January 2, 1975 and providing for them to take effect 180 days later); Act of March 30, 1973, Pub. L. 93-12, 87 Stat. 9 (1973) (providing that the draft Federal Rules of Evidence proposed by the Supreme Court in 1972 "shall have no force or effect except to the extent, and with such amendments, as they may be expressly approved by Act of Congress"); Edward W. Cleary, *Preliminary Notes on Reading the Rules*

that an arbitrator's decision may be admitted and discusses considerations for how to weigh the evidence, it does not discuss the evidentiary issues which a trial court must consider in determining whether to admit the decision at a jury trial.

The Court deals first with the Plaintiff's contention that the arbitration decision is irrelevant and therefore should be excluded under Rules 401 and 402. As Judge Woodcock wrote in his order on the Defendant's earlier motion for partial summary judgment, the arbitration decision is "probative of the Postmaster's legitimate, non-discriminatory reason to fire Ms. Kirouac." *Kirouac*, 2013 WL 2638045, at *27 n.91. The fact that a neutral arbitrator with expertise in analyzing labor contracts considered the evidence regarding the events of June 13, 2008 and determined that the Plaintiff's conduct ran afoul of certain provisions of the collective bargaining agreement does "tend[] to make [it] more . . . probable" that the Plaintiff *actually was* terminated for a legitimate, non-discriminatory reason. Fed. R. Evid. 401. Further, there is no doubt that this is a "fact . . . of consequence in determining [this] action." *Id*. No more is required to survive a relevancy challenge, so the Plaintiff's Rule 401/402 objection fails.

The Plaintiff's Rule 403 objection requires the Court to weigh the probative value of the arbitration decision against the "danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, waste of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. And the outcome of the Rule 403 balancing test may differ substantially depending on whether a jury or a judge

---

*of Evidence*, 57 Neb. L. Rev. 907, 909 (1978); Sherwood M. Sullivan, Comment, *Evidence Rules in the Federal Courts: A Time for a Change*, 38 Tex. L. Rev. 451, 451 (1960).

will be weighing the evidence. *United States v. Cameron*, 729 F. Supp. 2d 411, 416 & n.3 (D. Me. 2010) (quoting *Gulf State Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981) for the proposition that "excluding relevant evidence on the basis of 'unfair prejudice' is a useless procedure" in a bench trial because "a trial judge is able to discern and weigh the proper inferences, and then balance those improprieties against probative value and necessity" (internal quotation marks omitted)).

In assessing the probative value of the evidence, it seems appropriate to turn to the *Gardner-Denver* factors.[5] The first *Gardner-Denver* factor requires the Court to determine whether there are "provisions in the collective-bargaining agreement that conform substantially with Title VII" and, in this case, the Rehabilitation Act of 1973. *Gardner-Denver*, 415 U.S. at 60 n.21. As the Defendant brings to the Court's attention, the collective bargaining agreement contains a provision prohibiting "discrimination . . . against employees because of sex." Dougherty Decl. II 4.  This provision is similar to 42 U.S.C. § 2000e-2(a)(1), the core provision of Title VII concerning employment discrimination. But because Article 2 of the collective bargaining agreement does not mention Title VII by name or reference the massive body of jurisprudence that developed under it, it is difficult to know how far it sweeps or whether it has anything to say about related concepts like retaliation. *Cf.*

---

[5]      The Court agrees with the Plaintiff that in a jury trial the *Gardner-Denver* factors are for the jury since they go to the weight to be accorded the decision. Pl.'s Add'l Brief on Mot. to Exclude Arb. Dec. 1-2. But other courts have used the factors from *Gardner-Denver* to guide their Rule 403 analysis. *See Jackson v. Bunge Corp.*, 40 F.3d 239, 246 (7th Cir. 1994) (upholding trial court's exclusion of arbitration decision under Rule 403 using *Gardner-Denver* factors to determine decision's probative value.)

§ 42 U.S.C. 2000e-3(a) (Title VII provision specifically prohibiting an employer from "discriminat[ing] against any of his [or her] employees . . . because he [or she] has opposed any practice made an unlawful employment practice by [Title VII's anti-discrimination provisions]"). The collective bargaining agreement also contains a provision that forbids "unlawful discrimination against handicapped employees, as prohibited by the Rehabilitation Act." Dougherty Decl. II 4. Because this provision mentions the Rehabilitation Act by name, it arguably conforms to the Act entirely, adopting all of its statutory nuances and judicial interpretations.

The second *Gardner-Denver* factor requires the Court to examine the "degree of procedural fairness in the arbitral forum." *Gardner-Denver*, 415 U.S. at 60 n.21. On this point, both parties had an opportunity to call witnesses, conduct cross-examination, introduce evidence in support of their positions, and make legal arguments before the arbitrator. But the Plaintiff contends that she did not have adequate representation because she was represented by an inexperienced letter carrier. Kirouac Decl. 14-15. In contrast, according to the Plaintiff, the Postal Service was represented by two experienced labor relations specialists. *Id.*

The third *Gardner-Denver* factor is the "adequacy of the record with respect to the issue of discrimination." *Gardner-Denver*, 415 U.S. at 60 n.21. The arbitrator referred to the Plaintiff's discrimination defense throughout the opinion.[6] However,

---

[6]    The first footnote of the Defendant's opposition to the motion at issue includes a comprehensive list of citations on this point:

(Arbitration Decision at 7) ("Grievant does have a medical condition associated with anxiety"); (*Id.* at 12) (Management recognizes that Grievant was experiencing emotional or anxiety problems on June 13th in an attempt to excuse Grievant's insubordination); (*Id.* at 15) ("Management concedes that there is no argument that

the arbitrator's handling of the Plaintiff's discrimination claim in his written opinion is dismissive and slight. For instance, despite the arbitrator's contention that "a great deal of time was spent at the second hearing" discussing the Plaintiff's discrimination claims, which he characterized as the "linchpin of [her] defense," Arb. Dec. 38, his decision fails to include any significant description of the relevant testimony about these claims. Likewise, the collective bargaining agreement's anti-discrimination provisions are not mentioned in the "RELEVANT CONTRACT LANGUAGE" section; in fact, they are not mentioned in the opinion at all. Although the arbitrator apparently reached a legal conclusion when he determined that "[e]ven in the face of a recognized disability, Management should not be encumbered with the daily task of convincing an employee that she should perform the routine duties she was hired to do" because that would "rise[ ] to the level of an undue hardship," Arb. Dec. 42, the decision fails to explain the Plaintiff's disability in any detail or provide cogent reasoning about it. The arbitrator simply concludes, without explaining why, that the Plaintiff's discrimination claims are "not germane" because "no nexus has been established to the [emergency placement] or the [notice of removal]." Arb. Dec. 38. Furthermore, although the arbitrator deals to a limited

---

the Grievant has medical issues"); (*Id*. at 20) (addressing Grievant's testimony regarding "earlier encounters" with Supervisor Mike Anderson); (*Id*. at 21) (addressing Grievant's assertion that Anderson's supervision "caused her work related disability to become exacerbated"); (*Id*. at 29) (addressing the "lengthy explanation of the prior discipline issued to Ms. Kirouac, as well as her prior history with Supervisor Mike Anderson"); (*Id*. at 30) ("[c]onsiderable time was then spent covering perceived abused by Supervisor Mike Anderson, and improper discipline later rescinded"); (*Id*. at 42) (termination appropriate "[e]ven in the face of a recognized disability").

Def.'s Opp'n 2 n.1

degree with the claims of disability discrimination, he never mentions the term retaliation or cites to any provision of the Rehabilitation Act.

The fourth *Gardner-Denver* factor is the "special competence of the particular arbitrator." *Gardner-Denver*, 415 U.S. at 60 n.21. The resume of the arbitrator, Michael Pecklers, indicates that he is an attorney and had thirty years of relevant employment law experience when he conducted the arbitration at issue, including seventeen years as a grievance arbitrator. Dougherty Decl. II 3. Additionally, the Defendant's advocate at the arbitration, Theresa Dougherty, informs the court that Pecklers has "an excellent reputation as an experienced and fair and thorough arbitrator." *Id*. On the other hand, the arbitrator's decision is primarily based on credibility determinations, which he is no better equipped to make than a jury. *See* Arb. Dec. 14, 19, 34-38. This is not a case like several of those cited in the Defendant's opposition, in which courts found substantial probative value in arbitration decisions about technical aspects of collective bargaining agreements, distinct from the question of whether or not discrimination occurred. *Cf. Udo v. Tomes*, 54 F.3d 9, 11, 13 & n.4 (1st Cir. 1995) (arbitration decision regarding whether a hospital violated seniority provisions of a collective bargaining agreement found to be probative in Title VII and ADEA case); *Graef v. Chemical Leamon Corp.*, 106 F.3d 112, 117 (5th Cir. 1997) (error to exclude arbitration decision regarding whether Texas Department of Transportation's driver qualification standards and a collective bargaining agreement's seniority policy required an employer to bump a truck driver from its seniority list in workers comp retaliation case);   *Owens v.*

*Texaco*, 857 F.2d 262, 264-65 (5th Cir. 1988) (error to exclude arbitration decision regarding whether an employee had a right to retroactive seniority status under collective bargaining agreement in a Title VII case).   Unlike in *Udo*, *Graef*, and *Owens*, it takes no sophisticated legal acumen or labor relations expertise to determine whether the Plaintiff's actions constituted insubordination and refusal to comply with a direct order under the collective bargaining agreement.

All in all, analysis of the four *Gardner-Denver* factors suggests that the arbitration decision has some probative value, but not as much as it might have had if the arbitrator had more carefully examined the Plaintiff's discrimination claims, more thoroughly explained why he rejected them, or been required to make determinations that bore more directly on his special competence.

Against the arbitration decision's probative value, the Court weighs the "danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, waste of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. First, the Court has concerns that the jury may give special weight to the quasi-judicial conclusions of the arbitrator. "[C]ourts, recognizing the attendant danger of jury confusion and unfair prejudice, frequently have approved the exclusion of judicial findings, convictions, and similar evidence on Rule 403 grounds." *Faigin v. Kelly*, 184 F.3d 67, 80 (1st Cir. 1999) ("A lay jury is quite likely to give special weight to judicial findings merely because they are judicial findings."). Redacting the arbitration decision along the lines the Defendant has proposed could make the inherent problems in admitting the arbitration decision even worse, by

15

obscuring the basis of the arbitrator's conclusions from the jury and thus possibly conferring unwarranted authority on them.

Second, the jury will hear testimony from the same witnesses who appeared before the arbitrator and must make its own decisions about their credibility. Allowing the arbitration decision to be entered into evidence would threaten the jury's independence of judgment on credibility. *See Jackson*, 40 F.3d at 246 (no error in district court's decision to exclude arbitration decision under Rule 403 in part because "its admission into evidence would have . . . creat[ed] the risk that the arbitrator's decision and rationale would be substituted for the jury's decision" in workers comp retaliation case); *Jones v. Cargill, Inc.*, 490 F. Supp. 2d 989, 991-92 (N.D. Iowa 2007) (excluding arbitration decision under Rule 403 in part because of its "potential to usurp the jury's role is assessing credibility" in Title VII race discrimination and retaliation case (internal citations and quotation marks omitted)).

These two concerns would be compounded by the confusion and waste of time that admitting evidence regarding the arbitration would entail. If the Court allowed the arbitration decision to reach the jury, even in redacted form, the Court would be obliged to allow the Plaintiff to attack the decision's basis and present evidence on the *Gardner-Denver* factors. *See Gardner-Denver*, 415 U.S. at 60 & n.21; *Jones*, 490 F. Supp. 2d at 992. Evidence on the similarities between Article 2 of the collective bargaining agreement and analogous provisions of Title VII and the Rehabilitation Act of 1973, the arbitration's procedural fairness, the adequacy of the record, and

16

the arbitrator's qualifications and expertise, would both lengthen the trial and risk confusing the issues for the jury. *See id.*

Because the probative value of the arbitration decision is not particularly high, the Court finds that it is "substantially outweighed" by these dangers. Fed. R. Evid. 403.

Without reaching the issue, the Court notes the strong possibility that the arbitrator's decision might also constitute inadmissible hearsay. At first blush, the Defendant's business records exception and public records exception arguments, *see* Def.'s Am. Supp. Br. 6-7, are unconvincing. The arbitration decision was not made "at or near the time" of the events it documents, *cf.* Fed. R. Evid. 803(6), and it seems unlikely that an opinion reached by a private arbitrator and published only on a private database should be considered a "public record." *Cf.* Fed. R. Evid. 803(8). Furthermore, the structure of the Federal Rules of Evidence assumes that most judicial determinations are inadmissible hearsay, and it would be odd if arbitrators' findings were granted higher evidentiary status than those of judges. *See* Fed. R. Evid. 803(22) (allowing narrow exception to rule against hearsay for judgments of previous convictions); Fed. R. Evid. 803(23) (allowing narrow exception to rule against hearsay for judgments involving personal, family or general history, or a boundary); Christopher P. Mueller & Laird C. Kirkpatrick, 4 Federal Evidence § 8:89, nn. 61-70 and accompanying text (3rd ed. 2013); *see also Brookover v. Mary Hitchcock Mem'l Hosp.*, 893 F.2d 411, 419 (quoting Senate Report No. 93-1277 for the proposition that "[i]t is intended that the residual hearsay

17

exception[ ]"—which is now found in Rule 807—"will be used very rarely, and only in exceptional circumstances").

The Defendant's argument that the arbitrator's decision, if redacted, would not be hearsay at all because it has independent legal significance appears to be an issue preclusion argument in disguise.[7] In a case like this, where the arbitrator considered an employee's discrimination claim in the process of determining whether an employer had just cause to fire an employee, issue preclusion is

---

[7]      The issue of collateral estoppel—which is not currently before the Court—has a long, complicated procedural history in this case.

On July 13, 2012, eight months after the Plaintiff filed her complaint, the Defendant brought a motion for issue preclusion (ECF No. 21) on the basis of the arbitration decision, arguing that the arbitrator decided the Plaintiff was fired for "just cause," that principles of collateral estoppel foreclosed the Plaintiff from relitigating the issue, and that the Plaintiff could proceed with her claim in Count V that she was fired for discriminatory reasons only on a "mixed motive" theory. The Plaintiff filed a response to the Defendant's motion (ECF No. 35) on August 2. 2012, arguing that *Gardner-Denver* prohibited the Court from giving the arbitration decision preclusive effect.

That same day, the First Circuit issued its decision *Palmquist v. Shinseki*, 689 F.3d 66 (1st Cir. 2012), which determined that the Rehabilitation Act does not entitle a plaintiff to relief where retaliation is a motivating factor but not the but-for cause of an adverse employment action. On August 16, 2012, the Defendant filed a reply to the Plaintiff's opposition (ECF No. 39), arguing that, under *Palmquist* and principles of collateral estoppel, the arbitration decision foreclosed Count V of the Plaintiff's complaint entirely. The next day, the Plaintiff filed a motion requesting leave to file a surreply (ECF No. 40) in order to respond to the Defendant's *Palmquist* argument.

On August 20, 2012, United States Magistrate Judge John H. Rich III issued the Defendant an order (ECF No. 43) to show cause why Defendant's motion should not be resubmitted as a motion for summary judgment. The Defendant conceded in a responsive filing that it should (ECF No. 44), and Magistrate Judge Rich issued an order (ECF No. 55) striking the Defendant's pending motion for issue preclusion.

But when the Defendant filed his motion for partial summary judgment on October 19, 2012, seeking to have Count V of the Plaintiff's claim dismissed, the Defendant pressed its argument regarding the arbitration decision on different grounds: that, under *Gardner-Denver*, it could be admitted into evidence and accorded "'such weight as the court deems appropriate.'" Def.'s Mot. for Partial Summ. J. and Incorporated Mem. 11 (ECF No. 85) (quoting *Gardner-Denver*, 415 U.S. at 59-60) (footnotes omitted). The Defendant relegated its earlier issue preclusion argument to a footnote, which observed obliquely that "[s]ome courts have . . . gone so far as to use the language of estoppel" but failed to directly request the Court to apply issue preclusion. Def.'s Mot. for Partial Summ. J. and Incorporated Mem. 13 n.7.

On June 16, 2012, Judge Woodcock issued an order (ECF No. 120) denying the Defendant's motion. Judge Woodcock, who had no evidentiary objections regarding the arbitration decision before him, considered the arbitration decision and gave it some evidentiary weight, but no preclusive effect. *See Kirouac*, 2013 WL 2638045 at *27 n.91.

foreclosed by *Gardner-Denver* and subsequent First Circuit precedent. *Gardner-Denver*, 415 U.S. at 44-60; *Udo*, 54 F.3d at 13 n.4 (holding, on the basis of *Gardner-Denver*, that a district court hearing a Title VII and ADEA case was "of course" not bound by an arbitrator's decision that an employer's termination of a doctor violated a collective bargaining agreement); *see also Pulkkinen v. Fairpoint Commc'ns, Inc.*, No. 09-cv-99-P-H, 2010 WL 716109 (D. Me. Feb. 23, 2010); *aff'd* 2010 WL 1662619 (D. Me. Apr. 21, 2010).

Similarly, the Plaintiff raises an argument in her supplemental brief that the arbitrator's decision is "pure opinion" but does not meet Rule 701's requirements for opinion testimony by lay witnesses. Pl.'s Addt'l Br. on Mot. to Exclude Arb. Dec. 3 (ECF No. 226). The Defendant has not had a chance to respond to this specific argument and the Court need not decide the issue.

The Court notes, however, the Defendant's legitimate concern that it would be unfair to exclude evidence about the arbitration but allow the Plaintiff to introduce evidence about the union grievance system, including evidence about instances when the Plaintiff succeeded in having her discipline reduced. *See* Def.'s Opp'n 8-9. Though it is difficult to predict exactly how the Plaintiff will put on her case, the Court anticipates that the primary relevance of such evidence would be to show that the Plaintiff brought the grievances in the first place, and therefore engaged in protected activity. The Plaintiff may be able to present her case in a way that avoids opening this door. The Defendant is free to request that the Court revisit its Rule 403 balancing if and when the Plaintiff attempts to enter evidence

19

into the record that would leave the jury with an unfair impression about the Plaintiff's win-loss record in the grievance process.

## CONCLUSION

For the reasons stated above, the Court provisionally **GRANTS** the Plaintiff's motion to exclude the arbitration decision and testimony concerning it.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 6th day of November, 2013.